FILED
DEC 14 2005
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAMUEL LEWIS,

Petitioner,

v.

J. SOLIS,

Respondent.

No. C 04-2152 JF (PR)

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the denial of parole by the Board of Prison Terms (hereinafter "Board") on April 30, 2002. In its December 14, 2004 Order to Show Cause, this Court found that Petitioner raised two cognizable claims: (1) the Board's denial of parole was arbitrary and capricious and its findings were unsubstantiated; and (2) the Board failed to provide Petitioner with the benefits and consideration set forth in his plea agreement, resulting in a disproportionate sentence. Respondent filed an answer addressing the merits of the petition and Petitioner filed a traverse. Respondent thereafter filed a supplemental answer, and Petitioner filed a supplemental traverse. After reviewing the papers and relevant portions of the record, the Court concludes that Petitioner is not entitled to habeas corpus relief based on



United States District Court
For the Northern District of California

the claims presented and will deny the petition.

## I. BACKGROUND[1]

On February 18, 1988, Petitioner who then was eighteen years old, was driving through his neighborhood when he and a pedestrian, Marcus Venegas, got into a staring contest. Petitioner got out of the car and challenged Venegas to a fight. Venegas' brother intervened, and petitioner left and came back with some gang members. No fight broke out at that time. Instead, that evening Petitioner, along with two "Bloods" gang members, went to the home where Venegas was present. Petitioner was given a shotgun and told to "handle this." Petitioner walked up onto the porch and began shooting. April Parcell and Lavelle Bullard were shot but survived. Seventeen year-old Chevon Perry was shot in the back and died from her injuries.

On November 21, 1988, Petitioner was convicted of second-degree murder in violation of California Penal Code § 187 after entering a "no contest" plea. Petitioner was sentenced to a prison term of fifteen years-to-life. His minimum eligible parole date was February 19, 1998. In 1997, Petitioner received a three-year denial at his initial parole suitability hearing. On April 30, 2002, after having served over thirteen years, Petitioner appeared before the Board for his second parole suitability hearing. The Board found Petitioner unsuitable for parole and issued a two-year denial. Since the filing of the instant petition, Petitioner again was found unsuitable for parole at a hearing on October 28, 2004.

Following the April 20, 2002 denial of parole, Petitioner filed a state habeas petition in the Los Angeles Superior Court, which was denied January 9, 2004. Petitioner then filed habeas petitions in both the California Court of Appeal and California Supreme Court, which were summarily denied on February 24, 2004 and May 12, 2004, respectively. Petitioner filed the instant federal habeas petition on June 1, 2004.

\\\

---

[1] The underlying facts are set forth and incorporated from the Los Angeles Superior Court's January 9, 2004 order denying Petitioner's state habeas petition. In Re Samuel Lewis, BH 002512 (January 9, 2004), Resp't Exh. C.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

## II. DISCUSSION

### A. Standard of Review

The court will entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court may not grant a petition with respect to any claim adjudicated on the merits in state court proceedings unless that adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

For purposes of 28 U.S.C. § 2254(d)(1), "clearly established federal law" refers to the holdings of the United States Supreme Court as of the time of the relevant state court decision. Williams v. Taylor, 529 U.S. 362, 412 (2000). In other words, it is "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 123 S. Ct. 1166, 1172 (2003). A state court decision may be "contrary to" clearly established federal law if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-413.

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identified the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The relevant inquiry is not whether the state court applied the law erroneously or incorrectly, but "[r]ather that application must be objectively unreasonable." Lockyer, 123 S. Ct. at 1175. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Williams, 529 U.S. at 409. The "objectively unreasonable" standard does not

United States District Court
For the Northern District of California

equate to "clear error" because "[t]hese two standards . . . are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer, 123 S. Ct. at 1175.

On a petition for habeas corpus, a federal court looks to the decision of the highest state court to determine whether the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. LaJoie v. Thompson, 217 F.3d 663, 669, n.7 (9th Cir. 2000); see, e.g., Avila v. Galaza, 297 F.3d 911, 918 n.6 (9th Cir. 2002) (treating state court referee's report as the last reasoned state court decision, where report was summarily adopted by the court of appeal and petition for review to California Supreme Court was denied without comment); Packer v. Hill, 291 F.3d 569, 578-79 (9th Cir. 2002) (where state supreme court denied habeas petition without comment, looking to last reasoned decision of a state court as the basis of the state court's judgment), rev'd on other grounds, 123 S.Ct. 362 (2002). It also looks to any lower court decision examined or adopted by the highest state court to address the merits. See Williams v. Rhoades, 354 F.3d 1101, 1106 (9th Cir. 2004) (because state appellate court examined and adopted some of the trial court's reasoning, the trial court's ruling is also relevant); Collins v. Rice, 348 F.3d 1082, 1087 (9th Cir. 2003) (where state appellate court adopted reasons cited by trial court, federal review necessarily includes discussion of trial court decision as well).

Under U.S.C. § 2254(d)(2), a federal court may grant the habeas writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. §2254(d)(2)(2). The court must presume correct any determination of a factual issue made by a state court unless petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B. Justiciability**

Respondent first argues that this action is moot because a "favorable decision in this action cannot provide redress for the alleged constitutional violations at the April 30, 2002 hearing because the decision at that hearing . . . was superceded [sic] by the decision at the

subsequent hearing on October 28, 2004, which also found Petitioner unsuitable for parole." Resp't Mem. of P. & A. at 5-6. The instant petition is not moot simply because Petitioner has received subsequent parole suitability hearings. See Hubbart v. Knapp, 379 F.3d 773, 778-779 (9th Cir. 2004), cert. denied, 125 S. Ct. 913 (2005) (habeas petition challenging a civil commitment under California's Sexually Violent Predators Act was not moot because it fit within the capable-of-repetition-yet-evading review exception to the mootness doctrine).[2] Because Petitioner's claims fall within an exception to the mootness doctrine, the Court reaches the merits of the claims.

Next, in its supplemental answer, Respondent contends that this Court lacks subject matter jurisdiction because state parole matters do not constitute a federal question, relying on Sass v. California Bd. of Prison Terms, 376 F. Supp. 2d 975 (E.D. Cal. 2005) and In re Dannenberg, 34 Cal. 4th 1061 (2005).[3] Resp't. Supp. Ans. at 6. Although it concludes that the instant petition should be denied on the merits, the Court does not find Sass persuasive.

While there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979), a state's statutory parole scheme, if it uses mandatory language, may create a presumption that parole release will be granted when or unless certain designated findings are made, and thereby give rise to a constitutionally

---

[2] The mootness doctrine is based on the requirement in Article III, §2, of the Constitution, that there exist a case or controversy through all stages of federal judicial proceedings. This means that, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990). An exception to the mootness doctrine exists where a claim is capable of repetition yet evading review. This exception is limited to extraordinary circumstances where two elements combine: (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again. See Hubbart v. Knapp, 379 F.3d 773, 777 (9th Cir. 2004), cert. denied, 125 S. Ct. 913 (2005). Parole suitability hearings fall under both exceptions to mootness.

[3]The Sass court makes express reference to Dannenberg, stating that "1) the language of §3041 is not mandatory, 2) there is no right to parole in California, 3) the Board of Prison Terms has extremely broad discretion and is not required to fix a parole date, 4) the statutory scheme of §3041 indicates that §3041(b) extinguishes any expectancy an inmate may have in parole found in §3041(a)." Sass v. California Bd. of Prison Terms, 376 F. Supp. 2d 975, 981 (E.D. Cal. 2005) citing to Dannenberg, 34 Cal. 4th at 1084, 1087-88, 1097-98.



United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

protected liberty interest. See Board of Pardons v. Allen, 482 U.S. 369, 376-78 (1987) (Montana parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole); Greenholtz, 442 U.S. at 11-12 (Nebraska parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole). In such a case, a prisoner gains a legitimate expectation in parole that cannot be denied without adequate procedural due process protections. Allen, 482 U.S. at 373-81; Greenholtz, 442 U.S. at 11-16.

California's parole scheme uses mandatory language and is largely parallel to the parole schemes in Allen and Greenholtz giving rise to a protected liberty interest in release on parole. California Penal Code § 3041(b) provides that: "[t]he panel or board ... shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." The Ninth Circuit has held explicitly that "California's parole scheme gives rise to a cognizable liberty interest in release on parole." McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002); see also Biggs v. Terhune, 334 F.3d 910, 914 (2003). The scheme creates a presumption that parole release will be granted unless the statutorily defined determinations are made. Id. This is true regardless of whether a parole release date has ever been set for the inmate, because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." Biggs v. Terhune, 334 F.3d at 915-16 (9th Cir. 2003) (finding initial refusal to set parole date for prisoner with 15-to-life sentence implicated prisoner's liberty interest); cf. McQuillion, 306 F.3d at 903 (finding decision to rescind previously-granted parole release date implicated prisoner's liberty interest).

\\\

\\\

\\\

United States District Court
For the Northern District of California

C. Due Process Violation

Petitioner asserts that the Board's denial of parole was arbitrary and capricious, and that the Board's findings were unsubstantiated, thus violating his right to due process. Pet. at 5. In his supplemental traverse, Petitioner further contends that the Board's denial of parole implicated his federally protected liberty interest in parole. Supplemental Traverse at 3-10.

The Board is the administrative agency authorized to conduct hearings to determine whether an inmate is suitable for parole. California Penal Code §§ 3041(a),(b) authorize the Board to "establish criteria for the setting of parole release dates" and uses mandatory language to express California's parole scheme:

> The panel or board shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

Cal. Penal Code § 3041(b).

California's parole scheme creates a presumption that parole release will be granted unless the statutorily defined determinations are made. McQuillion, 306 F.3d at 902. Thus, this presumption creates a legitimate expectation in parole that cannot be denied without adequate procedural due process protections. Allen, 482 U.S. at 373-81; Greenholtz, 442 U.S. at 12. A prisoner's presumption and expectation in parole is legitimate regardless of whether or not a parole release date has ever been set because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." Biggs v. Terhune, 334 F.3d 910, 915-16 (9th Cir. 2003). However, "the requirements of due process are satisfied if 'some evidence' supports the decision" of the parole board and "'the evidence underlying the board's decision [has] some indicia of reliability." Id. at 915 (quoting McQuillion, 306 F.3d at 904 (citations omitted); Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987)).

In determining whether the Board's decision was based on "some evidence" and had some "indicia of reliability," the Court may consider whether Petitioner was afforded an opportunity to appear before, and present evidence to, the Board. See Pedro v. Oregon Parole

United States District Court
For the Northern District of California

Board, 825 F.2d 1396, 1399 (9th Cir. 1987), cert. denied, 484 U.S. 1017 (1988). The Court also may consider the Board's decision-making process over time. See Biggs, 334 F.3d at 916-17 (upholding the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, but noting that "[o]ver time . . . should [the Petitioner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole"). However, the "some evidence" standard may be met even when some of the Board's findings are unsupported. See id. at 916 (stating that "in spite of the fact that several of the Board's findings were unsupported," the Board's denial was affirmed).

At the April 30, 2002 hearing the Board denied parole, finding that: "The inmate needs additional time in order to fully understand and deal with the causation factors that led to the commitment of the life crime . . . The prisoner committed the offense in an exceptionally cruel, callous, violent, brutal, and cold-blooded manner." Resp't Exh. E (April 30, 2002 Parole Consideration Hearing Transcript) at 62. After reviewing the record, the superior court found that the Board's findings were supported by "some evidence" and denied Petitioner's state habeas petition. Resp't Exh. C at 4. This Court concludes that the state court's decision was not contrary to, or an unreasonable application of clearly established federal law, nor a decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1),(2).

The record reflects that Petitioner was present and presented testimony at his parole hearing. Resp't Exh. E. Evidence was submitted to the Board providing information on Petitioner's instant offense, history prior to conviction, and history while incarcerated. Id. Among the evidence received and reviewed by the Board were many letters of support and a favorable psychological report, as well as recommendations from the Deputy District Attorney for denial of parole. Id. Although the record reflects evidence that Petitioner has worked to improve himself while incarcerated, pursuing a higher education, attending self-help workshops, and receiving excellent work reviews, the record also reflects evidence

United States District Court
For the Northern District of California

supporting the Board's denial, including consideration of the nature of the offense committed and Petitioner's seven "115's" (Cal. Dept. of Correction's Rule Violation Report). See id. at 22-55. The Board's decision that Petitioner has made "'great progress' but . . . needs to 'demonstrate an ability to maintain gains over an extended period of time'" is supported by "some evidence" and has some "indicia of reliability." Resp't Exh. C at 4; Biggs, 334 F.3d at 915.

Petitioner also contends that the Board erroneously "used first degree elements as a basis for finding [him], who was convicted of second degree murder, unsuitable for parole." Pet. at 8. However, the description of Petitioner's offense as "cruel, callous, violent, brutal, and cold-blooded" does not indicate that the Board "used" elements of first degree murder to deny Petitioner's parole. Rather, these adjectives express the circumstances of the crime, as set forth in the guidelines pursuant to California Code Regs. tit. 15, § 2402(c).[4] The Board reviewed the events surrounding the offense with Petitioner and provided Petitioner an opportunity to present relevant testimony. Resp't Exh. E at 1-17. Referring to the facts surrounding Petitioner's offense, the Board deferred to the regulation guidelines and found that Petitioner was "not suitable for parole and would pose an unreasonable risk of danger to society." Resp't Exh. E at 60. Hence the record reflects that the Board did not erroneously "use" elements of first degree murder to deny Petitioner's parole, but rather, came to its decision based on "some evidence" with an "indicia of reliability." Biggs, 334 F.3d at 915.

Accordingly, the Court concludes that Petitioner's due process rights were not violated as there is "some evidence" to support the Board's decision denying parole, and the evidence underlying the Board's decision has some "indicia of reliability." Biggs, 334 F.3d at 915. Therefore, the state court's decision was not contrary to, or an unreasonable application of

---

[4] California Code Regs. Tit. 15, § 2402(c) provide the circumstances tending to indicate unsuitability for release. Such circumstances include that "the prisoner committed the offense in an especially heinous, atrocious or cruel manner," defined by factors such as: (A) multiple victims in the same or separate incidents; (B) offense was carried out in a dispassionate and calculated manner; (C) the victim was abused, defined or mutilated during or after the offense; (D) the offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering; and (E) the motive for the crime is inexplicable or very trivial in relation to the offense. Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E).

clearly established federal law, nor an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(b)(1),(2).

**D. Plea Agreement Violation**[5]

Next, Petitioner contends that the Board's denial of parole violated his plea agreement resulting in a disproportionate sentence to his offense. Pet. at 8-9. Petitioner asserts that his reasonable understanding "at the time of his plea was that he would serve approximately seven-and-a-half to eight years," based on the representations of his trial counsel and the case law at the time. Pet. at 9. Petitioner argues that his term has "become disproportionate to his offense based on the fact that the conviction stems from a plea contract." Id. Respondent contends that Petitioner received the benefit of his plea agreement by the earlier consideration of his parole suitability and his plea did not assure him of release on parole by a given date. Resp't Mem. of P. & A. at 13.

Due process requires that a guilty plea be both knowingly and voluntarily made. See Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The clearly established test for determining the validity of a guilty plea, is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). A habeas petitioner claiming a due process violation based on his plea agreement, bears the burden of establishing that his guilty plea was not knowing and voluntary. See Parke v. Raley, 506 U.S. 20, 29-30 (1992).

Here, Petitioner does not allege that his plea was involuntary. Petitioner states that on "November 21, 1988, [he] . . . was convicted by plea agreement of second degree murder, California Penal Code 187 and 190, and sentenced to a term of fifteen years-to-life."[6] Pet. at 5. Although he does not state the exact terms of his plea agreement, Petitioner contends that he "pled no contest with the reasonable understanding that in return for providing the State

[5] The Court notes that in denying Petitioner's state habeas petition, the Los Angeles Superior Court did not address this issue. However, as this claim was presented in Petitioner's habeas petition to the California Supreme Court, which was summarily denied, this Court will address the merits of the claim.

[6] As noted above, Petitioner was sentenced on January 4, 1989 to fifteen years-to-life with a minimum eligible parole date of February 19, 1998. Resp't Exh. E at 1.

with benefit (consideration) in the form of exposure to, and his serving a lengthy prison term, he would receive the court mandated reciprocal benefit of lessened punishment." Pet. at 9. Petitioner further claims that he was under the reasonable belief that he would serve no more than eight years in prison. See id. However, the record does not indicate, nor does Petitioner claim, that the prosecution promised any specific terms of relief which have been violated. There is no evidence at all that the parties to the plea agreement intended or promised that Petitioner would serve no more than eight years in prison. Without evidence of such a term in the plea agreement, it follows that there could be no breach of the agreement itself.

Since his 1988 sentence, Petitioner has received three parole suitability hearings: one in 1997, the second on April 20, 2002, and most recently on October 28, 2004. Resp't Exh. C at 1, Resp't Mem. P. & A. at 2. There is no evidence that the prosecution promised Petitioner that he would be released once eligible for parole. On the contrary, Petitioner asserts his claim based on a "reasonable understanding at the time [which] came from his trial counsel, and case law of that period." Pet. at 9. The fact that Petitioner has served more than eight years is not a new obligation or contrary to any term of his plea bargain. Petitioner has the same 15-to-life sentence today that he received in 1988.

The Court concludes that Petitioner has failed to demonstrate that the Board's denial of parole violated his plea agreement, that his sentence is disproportionate to his offense, or that his plea was not knowing and voluntary. Therefore, the state court's summary denial of Petitioner's state habeas petition was not contrary to, or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1).

## III. CONCLUSION

The Court concludes that Petitioner has failed to show any violation of his federal constitutional rights in the underlying state parole hearing. Accordingly, the petition for writ of habeas corpus is denied.

IT IS SO ORDERED.

DATED: 12/8/05

JEREMY FOGEL
United States District Judge

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

This is to certify that on 12-14-05, copies of this order have been mailed to:

Samuel Lewis
E-05524
Corr Training Facility
P.O. Box 689
Soledad, CA 93960-0689

Virginia I. Papan
California Attorney General's Office
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004